**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Jackson, | No. CIV 04-2128-PHX-FJM (GEE) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | **(revised)** |
| Dora Schriro; et al., | |
| Respondents. | |

On October 31, 2005, James Jackson, an inmate confined (at that time) in the Arizona State Prison Complex in Douglas, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.); [#1][1] Before the court are the Petition for Writ of Habeas Corpus, the respondents' answer, the petitioner's reply, the petitioner's objection to the court's original report and recommendation and the respondents' response to that objection.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for report and recommendation. On June 7, 2006, this court issued a report and recommendation. The petitioner filed an objection in which he included further factual allegations. The district court remanded the matter to the Magistrate Judge to consider the new

---

[1] Clerk's record number.

allegations and issue a revised report and recommendation. The respondents filed a response to the petitioner's objections.

The Magistrate Judge again recommends the District Court, after its independent review of the record, enter an order denying the Petition for Writ of Habeas Corpus. The state did not knowingly present perjured testimony at trial. Jackson's attorneys were not ineffective. The state did not deny Jackson meaningful appellate review.

Summary of the Case

On February 16, 2000, Jackson was convicted of fraudulent schemes and artifices and possession of a forgery device. (Respondents' answer, p. 2; Exhibit F.) At trial, the state presented evidence that Jackson ran a check forgery ring. (Respondents' answer, Exhibit C, pp. 3-4.) Jackson cashed some of these checks himself. *Id.* Others were cashed by a network of runners. *Id.*

At some point, the FBI became involved and traced the fraudulent checks first to the defendant's brother and then to his co-conspirators, William Sullivan and Jason Shehan. (Respondents' answer, Exhibit H., p. 33.) The FBI executed a search warrant at the residence of Sullivan and Shehan. *Id.* Jackson was in the home at the time of the search. *Id.* The agents found a computer, scanner, laser printer, several copies of legitimate checks, counterfeit checks payable to Jackson and others, fake identifications cards and a list of names and counterfeit checks for various amounts. (Respondents' answer, Exhibit C, pp. 3-4.)

Among these counterfeit checks, the agents found a check payable to the defendant in the amount of $912.00 purportedly from Beneco, Inc. (Respondents' answer, Exhibit H, pp. 34-35.) They found a second check payable to the defendant in the amount of $912.00 purportedly from Daniel Enterprises, Inc. *Id.* They found a third check payable to the defendant in the amount of $912.00 purportedly from Neil Hornstein, PC. *Id.* The agents also found a check payable to Jackson in the amount of $148,576.00 purportedly from Moonshine Media. *Id.* Sullivan testified at trial that this check was an "experiment" and was not meant to be cashed. *Id.*

1    The agents searched Jackson's vehicle and found photocopies of negotiated checks, check-making software, and a receipt for a storage locker. (Respondents' answer, Exhibit C, pp. 3-4.) In the storage locker, the agents found copies of checks and check-making paper. *Id.*

At the trial, ring members, William Sullivan, Jason Shehan, Michelle Munoz and Cameron Armstrong, testified against the defendant. *Id.*, Exhibit H, pp. 6-32. Sullivan testified that he created the checks under the defendant's direction using computer equipment supplied by the defendant. *Id.*

On June 23, 2000, the trial court sentenced Jackson to a 28-year term of imprisonment on the charge of fraudulent schemes and artifices and a concurrent 6-year term on the charge of possession of a forgery device. (Respondents' answer, p. 2.)

On direct appeal, counsel informed the trial court he was unable to find any colorable issues, so Jackson filed his own petition in propria persona. *Id.* Jackson argued "(1) ineffective assistance of trial counsel, (2) perjury by the state's witnesses, (3) 'tampering' with the record, (4) inability to review 'information' pertaining to certain state witnesses, (5) possible conflict of interest arising from the representation of defendant and a co-defendant by the office of court-appointed counsel, (6) improper jury instructions, (7) refusal of trial court to ask juror questions 'favorable' to defendant, and (8) ineffective assistance of appellate counsel." *Id.*, Exhibit C, p. 2. Jackson also instructed his counsel to raise the following issues: "(1) record fails to accurately portray the proceedings below, (2) discovery was not turned over to defendant, (3) evidence was destroyed or lost and tampered with or fabricated, (4) jury instructions were incorrect, (5) defendant should have been exonerated, (6) witness perjury, and (7) ineffective assistance of trial counsel." *Id.* The court of appeals declined to address Jackson's ineffective assistance claims and instructed him to raise them before the trial court. *Id.*, p. 5. The court of appeals considered the remaining claims on the merits and issued a decision affirming the conviction and sentences on December 5, 2002. (Respondents' answer, p. 4; Exhibit C, p. 5.) The Arizona Supreme Court denied Jackson's petition for review on March 27, 2003. (Respondents' answer, p. 5.)

In March of 2000, shortly after the trial, Jackson filed a pro se motion to vacate judgment. *Id.*, Exhibit O. In May of 2000, he filed a motion to amend his earlier motion. *Id.* In August of 2000, Jackson, now represented by Herman Alcantar, filed another motion to vacate judgment. *Id.*, Exhibit M. In July of 2001, the pro se motion was withdrawn. *Id.*, Exhibit N. Alcantar then withdrew, and Jackson was assigned a new attorney, Pamela Eaton, who apparently convinced him to withdraw the outstanding motion to vacate and file instead a petition for post-conviction relief. (Petition, p. 7.)

In his petition for post-conviction relief, Jackson raised the following issues: (1) petitioner was denied a fair and impartial hearing, (2) evidence was obtained illegally, (3) perjured testimony was offered, (4) trial counsel was ineffective for failing to investigate, failing to adequately prepare for trial, failing to submit evidence in the defendant's favor, and failing to consult with the defendant. (Respondents' answer, pp. 5-6.) The petition was denied by the trial court on October 17, 2002. *Id.* The court of appeals summarily denied review on January 6, 2004. *Id.*

Jackson filed a second notice of post-conviction relief on June 11, 2003. *Id.* He raised the following issues: (1) prosecutorial misconduct, (2) perjury, (3) fabricated and fraudulent evidence and (4) undisclosed evidence. *Id.*, pp. 6-7. The trial court dismissed the notice as procedurally inadequate under Rule 32.2(b), Ariz. R. Crim. Proc. *Id.*, Exhibit AA.

Jackson filed a second petition for post-conviction relief in April of 2004. (Respondents' answer, Exhibit BB.) The trial court dismissed the petition as procedurally barred under Rule 32.2(b), Ariz. R. Crim. Proc.[2] *Id.*, Exhibit CC.

On October 8, 2004, Jackson filed the instant Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.); [#1]   He asserts the following grounds for relief: (I) the prosecution improperly (1) solicited perjury, (2) withheld potentially exculpatory evidence, and (3) tampered with the record and fabricated documents;

---

[2] The trial court referred to this pleading as Jackson's third Petition for Post-Conviction Relief. *Id.*, Exhibit CC. The court may have counted the second notice of post-conviction relief as Jackson's second petition.

- 4 -

(II) trial counsel (1) failed to interview witnesses, (2) failed to investigate and submit exculpatory evidence, (3) failed to advise petitioner of the state's plea offer, (4) failed to conduct timely discovery necessary to evaluate the plea offer, and (5) failed to consult with the defendant; (III) post-trial counsel (1) improperly handled the motion to vacate, (2) failed to review the defendant's evidence, and (3) failed to conduct an investigation to support the motion to vacate; (IV) post-conviction relief counsel (1) failed to properly pursue post-conviction relief, (2) failed to investigate potential issues, and (3) failed to investigate or consult with the defendant; (V) appellate counsel (1) failed to pursue potentially meritorious issues; (VI) (1) the courts denied the defendant the opportunity to properly prepare and present his claims, (2) the superior court failed to acknowledge the problems in the record, (3) the court of appeals failed to review the transcripts, (4) the Arizona Supreme Court failed to order an evidentiary hearing and (5) the courts ignored the fact that he is innocent; (VII) the prosecution presented false and misleading evidence to the grand jury; and (VIII) (1) counsel failed to obtain missing discovery or transcripts, and (2) the defendant has the right to a hearing.  (Petition.)

The respondents filed an answer on June 24, 2005.  (Respondents' answer.)  They argue the majority of the claims are procedurally defaulted.  Jackson filed a reply on March 20, 2006. (Petitioner's reply.)

Discussion

The writ of habeas corpus affords relief to prisoners in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241.  If the petitioner is in custody pursuant to the judgment of a state court, the writ shall not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003). A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of [the] case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.* "It is not enough that our independent review of the legal question leaves us with a firm conviction that the state court decision was erroneous." *Id.* If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003). Where the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal review is limited to those issues that have been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A). This rule permits the states "the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In other words, the state courts must be apprised of the legal issue and given the first opportunity to rule on the merits. *Id.* at 275-76. Accordingly, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id.* The state courts have been given a sufficient opportunity to hear an issue

- 6 -

when the petitioner has presented the state court with the issue's factual and legal bases. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), as modified 247 F.3d 904 (9th Cir. 2001); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 348 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and should ordinarily be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* A claim that is procedurally defaulted must be denied unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998).

In grounds for relief (I)(1-3) and (VII), Jackson argues his due process rights were violated by prosecutorial misconduct. (Petition.) The respondents argue these claims are procedurally defaulted because the trial court dismissed these claims for procedural reasons

when they were raised in Jackson's second post-conviction relief petition. (Respondents' answer, pp. 17-18.) It appears, however, that the issue of prosecutorial misconduct was first raised in Jackson's first petition for post-conviction relief in the section discussing perjured testimony at trial. (Respondents' answer, Exhibit Q. p. 23.) Accordingly, the court finds ground (I) (1) has been exhausted. It does not appear, however, that the remaining claims of prosecutorial misconduct were exhausted in that petition. These grounds were raised in the second post-conviction relief petition. The trial court dismissed them for procedural reasons. (Respondents' answer, Exhibit CC.) Jackson has not shown cause for and actual prejudice arising from the default. In his brief in opposition to the report and recommendation, Jackson argues generally that he is ignorant of the law and is proceeding pro se. (Petitioner's objection.) This, however, does not constitute excusable cause for his default. *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). He does not argue failure to address the issues would result in a fundamental miscarriage of justice. They are procedurally defaulted.

The respondents argue in the alternative that issues presented in Jackson's first post-conviction relief petition are procedurally defaulted because they should have been raised on direct appeal. (Respondents' answer, p. 18) (citing Ariz. R. Crim P. 32.1, 32.2). The trial court, however, did not explicitly invoke this procedural bar. *See* (Respondents' answer, Exhibit W.) Accordingly, this court must assume the trial court analyzed ground (I) (1) on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied*, 510 U.S. 887 (1993); *Thompson v. Procunier*, 539 F.2d 26, 28 (9th Cir. 1976) ("Where a petition for a writ of habeas corpus presenting a federal constitutional question is denied by a state court with no reason given, we will assume that the state court has had an opportunity to pass upon the merits of the issue and has resolved it against the petitioner."); *See also Harris v. Reed*, 489 U.S. 255, 261-262 (1989) ("[T]he mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."). In the alternative, the court finds issues (I) (1-3) and (VII) are not colorable and may

be denied on the merits even if they were not properly exhausted. *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1336 (2006).

In his first ground for relief, (I)(1), Jackson argues his due process rights were violated by the prosecution's use of perjured testimony at trial. (Petition.) To establish this claim, Jackson must show the state's witnesses testified falsely, the falsity was material and the state was aware the testimony was false. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Testimony is material if it "could in any reasonable likelihood have affected the judgment of the jury." *Id.* at 154. In his petition, Jackson does not describe this perjured testimony with any specificity. In his brief objecting to this court's report and recommendation, he argues Sullivan testified falsely that (1) he created checks under the defendant's direction, (2) the defendant supplied the equipment to create the checks and (3) he did not begin making checks until after he met the defendant on May 31, 1999. (Petitioner's objection.)

Jackson argues there is evidence that Sullivan was making checks two months prior to their alleged first meeting. *Id.*, p. 4. He further argues Sullivan lied when he said he did not create any false identification because false identification was found during the police search. *Id.*

Jackson further argues there was evidence that Sullivan knew Munoz prior to the date when Sullivan said Jackson introduced them. *Id.*, p. 5. This, Jackson argues, is further evidence that Sullivan testified falsely at trial. *Id.* Jackson makes similar claims about testimony given by Munoz and Armstrong.

In sum, Jackson argues there is evidence in the record that contradicts testimony given by Sullivan, Shehan, Munoz and Armstrong. *See* (Respondents' answer, Exhibits I, Q.) These inconsistencies, however, were minor and could not have affected the verdict. *See Id.* Accordingly, they do not constitute a due process violation. Moreover, Jackson has provided no evidence that the prosecution knew this testimony was false. The fact the witnesses gave contradictory or inconsistent information on relatively minor issues is not enough. *See, e.g., Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002), *cert. denied*, 356 U.S. 978 (2002) ("[D]ue process is not implicated by the prosecution's introduction or allowance of false or

perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements."). Jackson has not established a viable claim under *Giglio*. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

Jackson further argues his vehicle was improperly searched and the Wells Fargo investigator offered perjured testimony. (Petitioner's objection, p. 7.) These arguments, however, were not made before the state court so this court may not consider them. *See* (Respondents' answer, Exhibits I, Q.); 28 U.S.C. § 2254(b)(1)(A). Moreover, the deadline has long since passed for presenting these issues. *See* Ariz. R. Crim. P. 32.4(a). They are procedurally defaulted. *See Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).

In ground (I)(2), Jackson argues the prosecution withheld "potentially exculpatory evidence" such as police reports and interview tapes. (Petition.) Under *Brady*, the prosecution has a duty to disclose exculpatory evidence to the defense. *Brady v. Maryland*, 373 U.S. 83 (1963). Jackson's right to a fair trial, however, is only violated if he can show "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Randolph v. People of the State of California*, 380 F.3d 1133, 1148 (9th Cir. 2004).

In his brief objecting to this court's report and recommendation, Jackson argues the government failed to give him interview reports from potential witnesses. (Petitioner's objection, p. 9.) He does not, however, describe the missing evidence with any specificity. *Id.* Accordingly, he does not show it would have affected the jury's verdict.

In ground (I)(3), Jackson argues he has evidence the official record has been altered and documents have been tampered with. (Petition.) He does not, however, offer enough specifics for the court to understand his argument. In his brief before the court of appeals, Jackson complained the official record did not include the proposed plea agreement and certain police reports were missing. (Respondent's answer, Exhibit C, p. 6.) The court of appeals, however, offered a reasonable explanation for this apparent discrepancy. *Id.* The plea agreement and

the reports were not introduced into evidence. *Id.* Accordingly, they were not made part of the trial record. *Id.* Their absence is not evidence of improper tampering with the official record.

In his brief objecting to this court's report and recommendation, Jackson maintains thousand of pages of documents held by his counsel, Herman Alcantar, went missing when Alcantar withdrew and Pam Eaton sent Jackson everything she obtained from Alcantar. (Petitioner's objection, p. 11.) He does not, however, connect this allegation with his argument that the official record has been altered.

In ground (VII), Jackson claims the prosecution used perjured evidence before the grand jury violating his due process rights. (Petition.) "[T]he Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974).

Jackson avers an FBI agent testified falsely before the grand jury that (1) Jackson was involved in the creation and cashing of a fraudulent check in the amount of $146,000, (2) Jackson was the ring leader of the check fraud ring and (3) Jackson started the ring. Jackson argues his co-conspirator, Sullivan, created the $146,000 check himself and, further, Sullivan was making counterfeit checks two months before they met so Jackson could not have *started* the check fraud ring.

Assuming these statements were false, Jackson's habeas claim still fails. He presents no evidence that the prosecutor knew these statements were false. Moreover, he does not establish these statements were material. To establish a due process claim, Jackson must show the grand jury would not have returned an indictment against him if these three allegedly false statements were omitted. *See United States v. Spillone*, 879 F.2d 514, 524 (9th Cir. 1989), *cert. denied*, 498 U.S. 864 (1990); 498 U.S. 878 (1990). He must show the remainder of the evidence against him would have been insufficient. *Id.* This, he has not done.

In grounds for relief (II), (III), (IV) and (V) Jackson argues ineffective assistance of counsel. The respondents argue these claims were not properly exhausted and are now

- 11 -

procedurally defaulted because they were not presented to the Arizona Supreme Court. In Arizona, however, to properly exhaust a claim the petitioner need only raise it before the court of appeals, not the state supreme court. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). The government argues this rule, which was announced in *Swoopes*, was rejected by the Supreme Court in *Baldwin v. Reese*, 541 U.S. 27 (2004). The Ninth Circuit, however, affirmed the validity of *Swoopes* in *Castillo* which was decided after *Baldwin*.

In grounds (II) (1-5), Jackson argues his trial counsel was ineffective violating his Sixth Amendment rights. (Petition.) "The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002), as amended at 311 F.3d 928, (citing *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Where the petitioner challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

In ground (II)(1), Jackson argues trial counsel failed to interview seven potential witnesses. (Petition.) Assuming arguendo counsel's performance was deficient, Jackson does not show prejudice. He does not identify these witnesses or explain how their testimony would have created a "reasonable doubt respecting guilt." *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir.1987) (The petitioner cannot show prejudice where he "offers no indication of what these witnesses would have testified to, or how their testimony might have changed the outcome of the hearing."). In his brief objecting to this court's report and recommendation, Jackson argues these witness could have testified that "they never received a check or a ride to cash checks from the defendant." (Petitioner's objection, p. 12.) Sullivan, however, testified that Jackson was a ringleader in the organization. *See* (Respondents' answer, Exhibit H, p. 23.)

Accordingly, it would not be surprising that Jackson was not involved in supervising every "runner" the organization recruited to pass the phony checks. The fact that some runners never received a check directly from Jackson or never received a ride from him could not affect the verdict.

In ground (II) (2), Jackson argues trial counsel failed to adequately investigate the facts of the case and consequently failed to submit exculpatory evidence contradicting the testimony of the state's witnesses. (Petition.) Again, Jackson fails to identify the alleged exculpatory evidence or how it might have changed the outcome of the trial. He cannot establish prejudice.

In ground (II) (3), Jackson argues trial counsel failed to advise him of the state's plea offer. (Petition.) He avers trial counsel was given a plea offer by the state dated December 15, 1999, but counsel went on holiday the same day and did not return until after the plea deadline. *Id.*; (Petitioner's objection, p. 11.) Jackson maintains he was unaware of this offer until he discovered it accidentally in August of 2001. (Petition.) He claims he has a copy of the plea agreement, but he did not make it part of the record. (Petitioner's objection, p. 11.)

Jackson cannot show either deficient performance or prejudice. If counsel went on vacation the same day the plea was dated, it is unlikely he saw it prior to his departure. The first time he would have seen it would have been when he returned to the office and found it had expired. Jackson does not explain how counsel's performance was deficient.

Further, he cannot show prejudice. Jackson must also show there is a reasonable probability that, but for his attorney's deficient performance, he would have accepted the plea agreement. *United States v. Blaylock*, 20 F.3d 1458, 1467-68 (9th Cir. 1994). Jackson, however, does not allege he would have accepted the plea offer if it had been communicated to him. He claims he does not understand all the terms of the plea and "cannot say that he would accept it knowingly. . . ." (Petitioner's objection, p. 11.) Moreover, the record indicates he was not favorably disposed to accepting a plea.

On May 16, 2000, shortly after the conclusion of the trial, Jackson filed a motion to file an amended motion for a new trial. In that filing he states as follows:

- 13 -

> During the defendant's criminal proceedings defense counsel Mr. Niel [sic] A. Labarge, attempted to coerce the defendant to enter an unlawful plea, and advised the defendant that this plea agreement would be in his best interests. The defendant advised Mr. Labarge, that he was <u>not guilty</u> [emphasis in original] of the charges and further requested that Mr. Labarge, interview the following witnesses . . . .

(Respondent's answer, Exhibit O, p. 5.) It is unclear whether or not the plea agreement referred to here is the same agreement that Jackson says he found accidentally in August of 2001. Nevertheless, it appears Jackson was adamant about going to trial and would not consent to a plea. Jackson cannot show his counsel's performance was deficient or that he was prejudiced.

In ground (II)(4), Jackson argues his counsel did not receive discovery until January 4, 2000, and was unable to effectively advise Jackson as to the plea offer. (Petition.) The respondents argue this particular issue was not exhausted in Jackson's first post-conviction relief petition and is now procedurally defaulted because Jackson cannot return to state court and exhaust it now. (Respondents' answer, pp. 30-31) (citing Ariz. R. Crim P. 32.2 ("A defendant shall be precluded from relief . . . based on any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding.")).

This issue, however, concerns Jackson's Sixth Amendment right to counsel. The right to counsel may be among those rights that may not be waived inadvertently. *See Cassett v. Stewart*, 406 F.3d 614, 622 (9th Cir. 2005) ("Under Arizona law, a claim that is 'of sufficient constitutional magnitude' can only be waived 'knowingly, voluntarily, and intelligently.'"). This court, however, need not resolve the issue of procedural default. Jackson's claim of error is not colorable and may be denied on the merits even if it was not properly exhausted. *Id.* at 624.

In this ground for relief, Jackson again fails to include sufficient facts for the court to understand and evaluate his argument. He does not identify the plea agreement or any of its terms. Jackson alleges he received a plea offer around January of 2000, but counsel was late getting discovery so he was unable to properly evaluate the benefits of the offer. Again, Jackson fails to establish prejudice. Assuming arguendo his counsel's performance was

- 14 -

deficient, Jackson cannot show that he would have accepted this plea agreement absent counsel's errors.

In ground (II)(5), Jackson argues his counsel failed to provide him with pertinent information in a timely manner or consult with him "on every aspect of the case." (Petition.) Again, Jackson cannot show counsel's failings, assuming they existed, caused him prejudice.

The state court did not clearly err when it rejected Jackson's claim that trial counsel was ineffective. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003); (Respondents' answer, Exhibits W, Y.)

The respondents argue grounds (III) (1-3) were not properly exhausted because they were presented only to the court of appeals and not to the trial court. (Respondents' answer.) This, they argue, is procedurally improper. *Id.* (citing Ariz. R. Crim. P. 32.9(c)(1)). The court of appeals, however, did not explicitly invoke this procedural bar. (Respondents' Answer, Exhibit Y.) Accordingly, this court must assume the state court of appeals analyzed the claims on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992); *Thompson v. Procunier*, 539 F.2d 26, 28 (9th Cir. 1976); *See also Harris v. Reed*, 489 U.S. 255, 261-262 (1989).

Assuming arguendo these grounds were not exhausted, they may still be resolved here. These claims (and those raised in grounds (IV), (V) and (VI)) are not colorable and may be denied on the merits. *See Cassett*, 406 F.3d at 624.

In grounds (III) (1-3), Jackson argues his post-trial counsel, Pamela Eaton, was ineffective in her handling of his motion to vacate.[3] (Petition.) Jackson argues she mislead him by saying that physical evidence and witnesses could not be presented at the hearing. *Id.* He further argues she failed to review the transcripts of the trial, dismissed his concerns and accused him of "seeing conspiracies." *Id.* She failed to contact witnesses or communicate with him after the motion was withdrawn. *Id.* Again, Jackson fails to establish prejudice.

Eaton convinced Jackson that he should withdraw his motion to vacate judgment and instead file a motion for post-conviction relief. Jackson does not explain how following this

---

[3] The court assumes arguendo there is a federal constitutional right to counsel at the post-trial stage. *But see Arizona v. Hickey*, 110 Ariz. 527, 530 (1974) (in banc).

- 15 -

advice caused him prejudice. Presumably he raised the same issues (or could have) in his petition for post-conviction relief that he intended to raise in his motion to vacate. *See Arizona v. Dunlap*, 187 Ariz. 441, 466 (App. 1996), *cert. denied*, 520 U.S. 1275 (1997) ("A motion to vacate judgment under Rule 24.2(a)(2) on the ground of newly-discovered evidence is evaluated under the standards of Rule 32.1, Arizona Rules of Criminal Procedure."); *Arizona v. Baca*, 187 Ariz. 61, 65 n. 3 (App. 1996) (finding "no material difference" between the cognizable grounds for a motion to vacate judgment and a petition for post-conviction relief). The trial court considered Jackson's issues as presented in his petition for post-conviction relief and denied on the merits. Jackson does not demonstrate a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.

The state court did not clearly err when it rejected this claim. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003); (Respondents' answer, Exhibits W, Y.)

In grounds (IV) (1-3), Jackson argues his post-conviction relief counsel rendered ineffective assistance. (Petition.) The post-conviction review process, however, is not mandated by the federal constitution. Accordingly, any errors in that process do not violate the constitution, and are not cognizable through a federal habeas corpus proceeding. *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998), *cert. denied*, 526 U.S. 1123 (1999); *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir. 1989), *cert. denied*, 493 U.S. 1012 (1989).

In ground (V) (1), Jackson argues his counsel on direct appeal was ineffective because he filed an *Anders* brief and did not raise the issues of prosecutorial misconduct, solicitation of perjury and violation of *Brady*. (Petition.); *See Anders v. California*, 386 U.S. 738 (1967); *Brady v. Maryland*, 373 U.S. 83 (1963). The respondents argue this issue is procedurally defaulted because it was not included in Jackson's first post-conviction relief petition and is now waived. This issue however, implicates Jackson's Sixth Amendment right to counsel and may be among those rights that may not be waived inadvertently. *See Cassett v. Stewart*, 406 F.3d 614, 622 (9th Cir. 2005). Nevertheless, the court finds this issue is not colorable and may be denied on the merits even if it was not exhausted. *Id.* at 624.

Jackson again fails to establish prejudice. Jackson raised these issues himself and they were rejected by the court of appeals. He cannot show "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000).

In grounds (VI) (1-5), Jackson complains about the state court appeals process. (Petition.) He complains the courts hindered his ability to prepare and present his claims, refused to acknowledge his pro per motions, interfered with his ability to consult with counsel and access legal materials, failed to accord him the benefits of the rules of criminal procedure, and failed to set hearings where affidavits exist to support his arguments. *Id.* He further argues the trial court failed to "acknowledge the problems with the documents or the inaccuracy of the transcripts. . . ." *Id.* He argues the court of appeals failed to review the transcripts. *Id.* He argues the state supreme court failed to order an evidentiary hearing in the face of overwhelming evidence that the conviction was unreliable. *Id.* Finally, he complains the courts ignored the fact that he is innocent. *Id.*

These various arguments boil down to a single one: Jackson argues the state courts denied him meaningful appellate review. This claim, however, is not cognizable in habeas corpus. *Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992).

Habeas corpus relief does not lie for errors of state law. *Hubbart v. Knapp*, 379 F.3d 773, 779 (9th Cir. 2004), *cert. denied*, 543 U.S. 1071 (2005) ("Federal habeas corpus relief is generally unavailable for alleged error in the interpretation or application of state law.") (internal punctuation omitted); *See Estelle v. McGuire*, 502 U.S. 62 (1991). The failure of the state court to comply with its own rules of criminal procedure is not cognizable. Only if the state court's procedures were so egregious as to render the proceedings fundamentally unfair will federal due process be implicated. *Estelle*, 502 U.S. at 72-73. Jackson cannot make this showing.

The courts below were not favorably disposed to his legal theories, but Jackson was permitted to pursue his state appellate remedies. Jackson filed a direct appeal, an appeal to the Arizona Supreme Court, a post-conviction relief petition, a second appeal, and a second post-

conviction relief petition. His direct appeal was accompanied by more than 100 pages of exhibits. (Respondent's answer, p. 4, n. 3.) The appeal to the Arizona Supreme Court was accompanied by more than 90 pages of exhibits. *Id.*, p. 5. n. 4. The post-conviction relief petition was accompanied by more than 100 pages of exhibits. *Id.*, p. 5. n. 5. Jackson was given a more than adequate opportunity to raise his issues below. Although the majority of the state court rulings were brief, the court of appeals' decision on direct review runs to ten pages and thoughtfully analyzes Jackson's claims of error. The proceedings below were not fundamentally unfair.

In grounds (VIII) (1-2), Jackson reiterates his previous arguments that counsel failed to obtain discovery or transcripts that would prove Jackson deserved a new trial or at least an evidentiary hearing. (Petition.) He further argues he is entitled to an evidentiary hearing because a hearing might prove the omitted testimony was prejudicial. *Id.* Jackson's arguments are entirely too speculative to prove prejudice. He cannot show his due process rights have been violated.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus. [#1]

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this report and recommendation to the petitioner and the respondents.

DATED this 15th day of December, 2006.

_____
Glenda E. Edmonds
United States Magistrate Judge